**FILED**
**Sep 13, 2023**
**12:04 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Kari Batey,** | ) | **Docket No. 2022-06-1666** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Beacon Hill Staffing Group, LLC,** | ) | **State File No. 65433-2022** |
| **Employer,** | ) | |
| **And** | ) | |
| **Federal Insurance Company,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

## COMPENSATION ORDER
## GRANTING BENEFITS AND ATTORNEY'S FEES

On August 29, 2023, the Court held a compensation hearing to decide the compensability of Ms. Batey's claim and whether she is entitled to an attorney's fee for a wrongful denial. For the reasons below, the Court holds the claim is compensable, grants the requested benefits, and awards an attorney's fee for the wrongful denial.

### Claim History

Ms. Batey sustained an L1 vertebrae fracture, according to her petition, while working from home on August 1, 2022, for Beacon Hill Staffing Group, LLC.

She testified that she was hired to work remotely, entering invoices into a database for Beacon Hill's client. The only job requirement was access to high-speed internet. Beacon Hill gave her a laptop, mouse and other equipment, and she set up an office in an upstairs bonus room in her home. She explained her office layout to Beacon Hill when she was hired. Beacon Hill allowed her two breaks during the workday and thirty minutes for lunch.

On the morning of the injury, she clocked in at 8:00 a.m., performed some of her work duties, and attended online training. When that ended, she was asked to attend another session. Ms. Batey agreed but excused herself to use the bathroom.

1

The bathrooms are on the home's main floor. As she walked, she held onto the railing and slightly hurried down the steps because she needed to return for the training. Ms. Batey testified, "The next thing I know, I'm hitting the steps." She clarified that she "missed" three steps, although her memory of the accident is not entirely clear, and she was "in shock." At the time, she was wearing athletic shoes and did not trip on anything—she simply "missed" the steps and fell to the bottom of the stairs.

Ms. Batey fell on her back and right hip. She called for her husband to help. He did not witness her fall but quickly came to her aid. Immediately afterward, Ms. Batey heard a "dinging" from the work computer and realized the client was trying to contact her. Her husband retrieved her phone, and Ms. Batey left voicemails about the fall with her recruiter, "Ashley," and a supervisor from Beacon Hill, "Jennifer." She then contacted "Linda," a supervisor for the client, and told her she had fallen down the stairs. Her husband then dialed 9-1-1, and Ms. Batey was transported to the closest emergency room.

At the hospital, Ms. Batey reported she "was walking down stairs just prior to arrival when she missed the bottom step and fell." X-rays showed an L-1 compression fracture. Ms. Batey was scheduled for a kyphoplasty and released. She went to a Nashville hospital on August 6 in severe pain. There, Dr. Douglas Mathews ordered the kyphoplasty, which was performed on August 8. Ms. Batey was released the next day.

A couple of weeks later, Ms. Batey hired her attorney. Beacon Hill offered a panel, but she never received authorized treatment. Instead, Beacon Hill denied the claim, contending that Ms. Batey "has not sustained an injury by specific traumatic event arising out of and in the course of employment."

Ms. Batey returned to Dr. Mathews on October 10. He wrote that the kyphoplasty brought her "significant relief," and steroid injections or physical therapy might be considered if her symptoms worsened. He released her to return as needed.

In April 2023 her pain increased, and Ms. Batey saw another doctor in the same practice, Dr. Richard Lebow. Ms. Batey testified that she has returned to Dr. Lebow and wishes to continue with him as the authorized treating physician.

As for her past medicals, Ms. Batey offered several bills and explanation of benefits forms into evidence. She reviewed them and testified that she received and paid them all. The forms and bills state they are for treatment between August 1 through 9, 2022, for her fall, and they total $3,367.61. The Court admitted them into evidence over Beacon Hill's objection.[1]

---

[1] Trial Exhibit 6, and Exhibit 7 to Dr. Mathews's deposition, are the same sets of documents. Beacon Hill objected at trial, stating that the documents were not properly authenticated. It also renewed an objection

Dr. Mathews testified that imaging before the fall did not show the L1 compression, but the August 1 imaging did. So, the injury was "more likely than not" and "more than 50 percent" acute and not longstanding. Dr. Mathews agreed that she suffered "a traumatic event" at her home. He said Ms. Batey would have been off work for "a couple of weeks" after the procedure. Dr. Mathews assigned a fifteen-percent impairment rating. He reviewed the explanation of benefits forms and bills and confirmed that the "billing was reasonable and necessary."

Dr. Mathews clarified on cross-examination that his opinion was based on her history. Initially he questioned whether the claim fell under workers' compensation because the accident occurred at Ms. Batey's home. He agreed, however, that compensability is a legal, not medical, question. Dr. Mathews explained on redirect:

> She has a pre-existing condition of osteoporosis, which increases the likelihood that a fall and someone with that condition is more likely than someone without it to have a fracture. We've determined that, and that makes perfect sense. She was a former smoker. That doesn't help. But the event of falling down some steps is, more likely than not, the source of her L1 fracture with—given her risk factors as well, and she needed the treatment. . . . As to whether it's deemed workers' comp or not is up to the Court.

Adjuster Heike Brooks testified about the claim's handling and why she denied the claim. She learned of the claim on August 23 after receiving the First Report of Injury, completed by Ms. Batey's attorney's staff. The next day, she sent Ms. Batey a letter with a Form C-31 Medical Waiver and Consent for her to sign. On August 30, Ms. Brooks emailed a panel, and Ms. Batey chose a physician. That same day, Ms. Brooks emailed the paralegal at Ms. Batey's attorney's office to ask about the waiver, telling the paralegal she would not make an appointment without the signed waiver. Ms. Brooks later received a limited release allowing access to the August 6 emergency room records.[2] On September 6, she emailed the paralegal to request a recorded statement from Ms. Batey. Ms. Brooks denied the claim on September 13 because she "just didn't have enough information to

made at Dr. Mathews's deposition. Ms. Batey authenticated the documents in her testimony. Further, at the deposition, counsel objected but gave no reason, and the exhibit was marked. Beacon Hill never cross-examined Dr. Mathews about the exhibit, and its attorney admitted that he received a copy of the proposed exhibit a few hours before the deposition. Beacon Hill waived the objection when it gave no basis at that time. Had Beacon Hill given a rationale for its objection at the evidentiary deposition, counsel would have had the opportunity to re-phrase his questions in an attempt to cure any defect. *See* Tenn. R. Civ. P. 32.04(3)(B) (2022).

[2] The date she received the partial release and the records is unknown.

determine if she suffered a compensable work injury." After the denial, Ms. Brooks received an additional medical release through formal discovery in January 2023.

Ms. Brooks took Ms. Batey's recorded statement in early November, which did not change her mind about compensability. Ms. Brooks testified, "We determined that the injury wasn't work-related. There was nothing work-related that caused the fall. She just fell down the steps in her house, and that's why it was denied."

Ms. Batey sought future medical benefits with Dr. Lebow; reimbursement for her out-of-pocket medical expenses; two weeks of temporary total disability benefits; and permanent partial disability benefits for the fifteen-percent impairment. She additionally requested attorney's fees for a wrongful denial. Ms. Batey's attorney filed an affidavit stating that he spent 104.6 hours on the case at the hourly rate of $350, totaling $36,610. Ms. Batey requested a referral to the Compliance Program for several alleged violations.

Beacon Hill countered that the injury is not compensable, so Ms. Batey is not entitled to benefits. In addition, the denial was proper, given the information available to Ms. Brooks at the time she issued it.

**Findings of Fact and Conclusions of Law**

At a compensation hearing, Ms. Batey bears the burden of proof and must show entitlement to benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2022).

*Compensability*

The threshold issue is whether Ms. Batey suffered an injury arising primarily out of and in the course and scope of employment. She must show "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. *Id*. at § 50-6-102(12).

An injury must both "arise out of" and occur "in the course of" employment. *Wait v. Travelers Indem. Co.,* 240 S.W.3d 220, 225 (Tenn. 2007). The "arising out of" requirement refers to "cause or origin;" while "in the course of denotes the time, place, and circumstances of the injury." *Id.* The *Wait* Court explained, "An injury occurs in the course of employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." *Id.* at 226. In addition, "injuries sustained during personal breaks are compensable," including "seeking toilet facilities." *Id.*

In *Wait,* the employee was assaulted during a lunch break while working from her home. In dicta, the Tennessee Supreme Court expressed broad support for "telecommuting" as an employment practice. *Id.* at 225. The justices held that the employee was in the "course of" her employment because she was "at a place where her employer could reasonably expect her to be," and she was not "engaging in any prohibited conduct or . . . violating any company policy by preparing lunch in her kitchen." *Id.* The justices rejected the argument that the employee had to be "fulfilling a work duty" when she was injured to be within the course of employment. Instead, the *Wait* court said the employer "would have anticipated that the plaintiff would take a lunch break at her home just as employees do at traditional work sites."[3]

Here, immediately before the accident, Ms. Batey was working in her home office. Beacon Hill expected her to be there because it hired her to work remotely. No evidence suggested that Beacon Hill had rules about where she would work in her home, her use of stairs, or restroom breaks. In fact, Ms. Batey testified that Beacon Hill approved her office layout, and the rules permitted two breaks, presumably to use the facilities, and a lunch break. The Court finds Ms. Batey was within the course and scope of employment when she became injured.

Turning now to whether Ms. Batey's injury arose from her employment, Beacon Hill's denial states that Ms. Batey had "not sustained an injury by specific traumatic event arising out of and in the course of employment." Dr. Mathews testified that she *did* suffer "a traumatic event." He pointed out that imaging before the fall did not show the L1 compression, but the August 1 imaging did. He concluded the injury was "more likely than not" and "more than 50 percent" acute and not longstanding. Although Dr. Mathews did not testify using words directly quoting the statutory definition of "injury," the proof is sufficient for the Court to conclude that "the statutory requirements of an injury as defined in section [50-6-102(12)] are satisfied." *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017).

Beacon Hill alternatively argued that the injury was idiopathic and did not result from the fall. An idiopathic injury is one of "unexplained origin or cause," or "the result of a condition purely personal to the employee." *Bullard v. Facilities Performance Grp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Aug. 7, 2018). In *Bullard,* an employee became injured when she missed a single step while exiting a work building. The Appeals Board held this was not an idiopathic injury and was compensable, reasoning that "[a]n injury arises out of the employment if it is caused by a hazard incident to such

---

[3] Beacon Hill argues that *Wait* is inapplicable because it involved a workplace assault. The Supreme Court found the claim was not compensable because it applied the assault analysis and concluded that the employee's injury did not "arise out of" employment. The Court agrees that this portion of the ruling does not apply in this case. However, the *Wait* Court's analysis about the "course of employment" requirement is instructive and similar to the facts in this case.

employment." *Id.* at *11. Further, "an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle of water or *a step*, in addition to the injured employee's ambulation." *Id.* (Emphasis added).

In this case, as in *Bullard,* Ms. Batey was walking and became injured when she missed three stairs. A step is one of the explicit examples of an employment hazard. Beacon Hill questioned Dr. Mathews at length regarding whether Ms. Batey's need for the kyphoplasty was from osteoporosis rather than the fall. Dr. Mathews acknowledged her "pre-existing condition of osteoporosis … increases the likelihood [of] a fall and [that] someone with that condition is more likely than someone without it to have a fracture." He likewise agreed that her past smoking increased her risk. Regardless, Dr. Mathews concluded, "[T]he event of falling down some steps is, more likely than not, the source of her L1 fracture with—given her risk factors as well[.]"

Therefore, the Court finds Ms. Batey satisfied her burden to show her injury arose primarily out of her employment. The preponderance of the evidence supports that she suffered a compensable injury.

*Benefits*

Ms. Batey seeks temporary total disability, permanent partial disability, and future medical benefits, as well as repayment of past out-of-pocket medical expenses.

As to temporary total disability, Dr. Mathews testified that Ms. Batey could not work for two weeks after the kyphoplasty. At the weekly compensation rate of $562.97, two weeks of temporary total disability benefits is $1,125.94, due immediately in a lump-sum.

Ms. Batey suffered a fifteen-percent impairment. Under section 50-6-207(3), this must be multiplied by 450 weeks, which equals 67.5 weeks, times the compensation rate. This equates to an original award of $38,000.48, also immediately payable as a lump sum. The initial benefit period has not expired yet. If appropriate, she may file a petition for increased benefits on or after January 26, 2024.

Ms. Batey is additionally entitled to lifetime future medical benefits with Dr. Lebow. Where an employer refuses to provide medical treatment and denies an employee's claim, the employer runs the risk that a physician of the employee's choosing will be designated the authorized physician and that the employer will be responsible for paying for that physician's treatment. *Blevins v. S. Champion Tray, LP,* 2019 TN Wrk. Comp. App. Bd. LEXIS 29, at *16-17 (July 11, 2019). Beacon Hill denied the claim and refused to provide medical benefits. Therefore, Beacon Hill shall authorize any treatment with Dr. Lebow that is reasonable, necessary, and related to the work accident.

In addition, Dr. Mathews reviewed the explanation of benefits forms and bills at his deposition, and he confirmed that the "billing was reasonable and necessary." At trial, Ms. Batey offered the same forms and bills totaling $3,367.61. She authenticated them and testified that she paid them all. The Court holds she is entitled to immediate repayment of the requested sum.

*Attorney's fees and referral to Compliance Program*

Section 50-6-226(d)(1) states that a court may award attorney's fees and expenses "in addition to attorneys' fees [otherwise] provided for in this section" when an employer "[w]rongfully denies a claim[.]"

For an award of reasonable attorney's fees and expenses under section -226(d)(1), an employee must show that the employer was erroneous or incorrect in denying the claim. *Walls v. United Technologies Corp.,* 2021 TN Wrk. Comp. App. Bd. LEXIS 27, at *19 (Aug. 6, 2021). An employee satisfies her burden of proof under section -226(d)(1)(B) if the employee proves the employer's denial was "erroneous, incorrect, or otherwise inconsistent with the law or facts *at the time the denial decision was made." Id.* at *24 (Emphasis added).

Here, Ms. Brooks testified that she denied the claim on September 13 because she "just didn't have enough information to determine if she suffered a compensable work injury." She further explained, "We determined that the injury wasn't work-related. There was nothing work-related that caused the fall. She just fell down the steps in her house, and that's why it was denied." Ms. Brooks acknowledged that nothing from the recorded statement she later took changed her mind about compensability. While she might have had no medical information at that time, the records would not have swayed her. Ms. Brooks's emphatic testimony was that the circumstances of the fall itself and particularly that it occurred in Ms. Batey's home guided the decision.

As previously held in this order, that is an incorrect interpretation of the law. Ms. Batey satisfied her burden to show the denial was incorrect at the time it occurred. The Court holds that the denial was wrongful and awards fees.

As to the amount sought, her attorney offered a detailed breakdown to the tenth of an hour of every task and its duration. His hourly fee is reasonable in the Nashville legal community. His involvement in the case began shortly after the date of injury, and he shepherded it through mediation, discovery, and trial for over one year. The total he seeks, $36,610, is reasonable, and the Court awards it.[4]

---

[4] Beacon Hill filed a response to the fee affidavit restating the arguments it made at trial opposing the entire award. It did not question whether the hourly rate was reasonable. Beacon Hill alternatively argued that only a portion of the fee should be awarded, because even if it had accepted the claim, the parties would

Finally, Ms. Batey asserted that Beacon Hill might have violated Bureau rules and the statute in handling her claim. The Court refers the case to the Compliance Program for consideration of the following potential infractions.

- On August 1, 2022, Ms. Batey gave immediate notice of the injury to Beacon Hill. However, no one from Beacon Hill informed its carrier; Ms. Brooks learned of the claim when Ms. Batey's lawyer filed a First Report of Injury on August 23. Rule 0800-02-01-.05(1)-(2) (May, 2018) states, "An employer must accept any notice of a claim for workers' compensation benefits from any employee . . . alleging an injury," and "employers shall report all known or reported accidents or injuries to their adjusting entity within one (1) business day of knowledge of [the] injury." Beacon Hill did not accept Ms. Batey's report or timely report it to the carrier.

- Ms. Brooks testified that received notice of the claim on August 23 and offered a panel on August 30. Section 50-6-112(9) says that failure to timely provide a panel is grounds for a civil penalty. Further, Rule 0800-02-01-.06(1)-(2) states that after receiving "notice of a workplace injury and the employee expressing a need for medical care, an employer shall, as soon as practicable but no later than three (3) business days after receipt of such request, provide the employee a panel of physicians," and failure to do so within three business days from the date the employer has notice is grounds for a civil penalty. Beacon Hill did not offer a panel within three business days.

- Along these lines, Ms. Brooks testified that she informed Ms. Batey's attorney's office that she could not schedule an appointment until receiving the signed waiver. The statute and rules do not condition an employer's obligation to provide medical treatment on receiving a signed waiver. Section 50-6-112(8) states that failure to provide medical treatment made reasonably necessary by the accident subjects an employer to penalties. Beacon Hill did not furnish medical treatment.

- Ms. Brooks was notified about the claim on August 23 and denied it on September 13. Rule 0800-02-14-.05(6) states that "decisions on compensability shall be made by the adjusting entity within fifteen (15) calendar days" of notice of the injury. Beacon Hill did not make a timely compensability decision.

**IT IS ORDERED:**

---

have been unable to resolve it until after Dr. Mathews's deposition. Beacon Hill cited no authority for its alternative approach, and the Court rejects it.

1. Beacon Hill Staffing shall pay Ms. Batey past temporary total disability benefits of $1,125.94.

2. Beacon Hill Staffing shall pay Ms. Batey $38,000.48 as permanent partial disability benefits. Ms. Batey may file a petition for increased benefits on or after January 26, 2024, if appropriate.

3. Beacon Hill Staffing shall provide lifetime medical benefits with Dr. Lebow for reasonable, necessary, and work-related treatment.

4. Beacon Hill shall immediately reimburse Ms. Batey for past out-of-pocket medical expenses totaling $3,367.61.

5. Ms. Batey's attorney is entitled to twenty percent of the above awards, or $8,498.81. He is additionally awarded $36,610 as an attorney's fee from Beacon Hill Staffing for the wrongful denial of the claim.

6. The $150.00 filing fee is taxed to Beacon Hill Staffing, to be paid to the Clerk under Rule 0800-02-21-.06 within five business days, and for which execution might issue if necessary.

7. Beacon Hill Staffing shall prepare and submit to the Clerk a Statistical Data Form (SD-2) within ten business days of this order becoming final.

8. Unless appealed, this order becomes final thirty days after issuance.

9. The case is referred to the Compliance Program for consideration of the imposition of penalties.

**ENTERED September 13, 2023.**

_Kenneth M. Switzer_
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Evidence:
1. Dr. Mathews's deposition transcript and exhibits (abridged medical records by agreement)
2. Wage statement
3. Denial
4. Offer letter and job description
5. Form C-32
6. Explanation of benefits forms and medical bills
7. Injury report from Beacon Hill to carrier
8. Fee affidavit

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice, and parties' additional issues
3. Employee's Motion to Compel Discovery
4. Order Granting Motion to Compel
5. Hearing Request
6. Scheduling Hearing Order
7. Motion to Amend Scheduling Hearing Order
8. Employee's email response
9. Amended Scheduling Order
10. Employer's Motion to Compel
11. Motion to Alter, Amend or Suspend Scheduling Hearing Order
12. Employee's Response
13. Order Denying Motion to Amend
14. Order Denying Motion to Compel
15. Dispute Certification Notice and Employer's Objection
16. Employee's Pre-Hearing Brief
17. Employer's Pre-Compensation Hearing Brief
18. Employer's Witness and Exhibit List
19. Employer's Motion Regarding Witness Testimony of Heike Brooks and Affidavit
20. Prehearing Statement
21. Order Granting Motion for Telephone Testimony
22. Employer's Response in Opposition to Employee's Request for Attorney's Fees

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on September 13, 2023.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|---------------|--------------|-------|---------|
| Peter Frech, employee's attorney | | | X | pfrech@forthepeople.com hvillamar@forthepeople.com |
| James Tucker, employer's attorney | | | X | jtucker@manierherod.com dstevens@manierherod.com pbarron@manierherod.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*